Syllabus.

## J. R. JOHNSON AND OTHERS v. J. D. HOGAN AND OTHERS.

1. An administrator *de bonis non* has nothing to do with the mal-administration of the estate by the former administrator, and cannot maintain a suit against the former administrator or his sureties for a *devastavit*, nor to revise the accounts of the former administrator.

2. Parties interested in the distribution of an estate, as legatees, distributees, or creditors, may surcharge and falsify the accounts of an administrator, by a proper proceeding instituted in the District Court of the county where the succession was opened. (Paschal's Digest, Article 1382.) But an administrator *de bonis non* is not such a party ; nor has the District Court of a different county the jurisdiction to entertain such a proceeding.

3. An administrator *de bonis non* instituted in the District Court of B. county a suit against the sureties of the original administrator, who had been appointed by the probate court of C. county. The suit involved a revision of the accounts of the original administrator. Pending the suit, the administrator *de bonis non* was discharged from the administration, and the distributees were admitted as plaintiffs in his stead. The defendants pleaded to the jurisdiction. *Held*, that the plea to the jurisdiction should have been sustained. The distributees could only take the place of the administrator *de bonis non ;* and moreover, the District Court of B. county was not the proper tribunal to revise the probate court of another county.

4. When distributees of an estate sue an administrator or his sureties for a *devastavit*, the defendants are entitled to credit for necessary outlays by the administrator in the maintenance of the distributees during their minority, and for expenses of administration, including reasonable attorneys' fees, etc. The amount of the estate coming to the distributees, as well as their social condition, may furnish a guide in estimating such outlays.

APPEAL from Bastrop. Tried below before the Hon. J. P. Richardson.

The case is sufficiently indicated in the opinion of the court.

*Jones & McLester*, for the appellants.

*Moore & Shelley*, and *Terrell & Walker*, for the appellees.

WALKER, J.  H. McLester brought this suit as the administrator *de bonis non* of the estate of Joseph R. Tanner, in 1861. James R. Tanner, a former administrator, had died, and John D. Hogan, Joseph Glover, E. T. Barrett, and John T. Miller, were sued as securities on his bond.   Joseph R. Tanner died in the year 1853, at the town of Saluria, in Calhoun county, Texas. He left no surviving wife, but four children—Nancy, George W., Catharine, and Mary—survived him.   The children were of tender ages, the eldest, Nancy, being but fourteen years old at the time of her father's decease.   Catharine and Mary had been left with their grandparents in the eastern part of the State. The elder two children, Nancy and George, were with their father, in Calhoun county, at the time of his death.

We are told in the briefs that James R. Tanner, being the brother and next of kin to whom letters could be granted, administered on the estate, and was appointed guardian of the persons and estates of the children.   This action was brought for the recovery of certain specific property and money, alleged to have been in the hands of the first administrator, amounting, in principal and interest, to the sum of two thousand five hundred dollars.

The petition also averred the death of James R. Tanner, in 1857.

On the 9th of April, 1861, the defendants filed their pleas, general and special, denying any unlawful conversion of the property by their principal.

There does not appear to have been any farther action in the case until the 8th day of February, 1869, when Nancy, the eldest child, having died intestate and without heirs of her body, the present plaintiffs, as surviving heirs of Joseph R. and Nancy Tanner, took the action on themselves as plaintiffs, McLester, the administrator *de bonis non*, having settled his account and been discharged.

The plaintiffs now, by the allegation of new matter, increase their demand from two thousand five hundred dollars to twenty-five thousand dollars, materially changing the nature of the suit.

The defendants demurred to the petition, and plead to the juris-
diction of the court, excepting, likewise, to the change in the na-
ture of the plaintiffs' demand.   They also denied certain items
in the account, made up of the hire of negroes.   They also plead,
by way of set-off, the support and maintenance of the children
of Joseph R. Tanner, the present plaintiffs in the action, by
James R. Tanner during his lifetime, claiming the reasonable
value of the necessaries furnished to the four children to be
twelve hundred and fifty dollars per annum.   The expenses of
the last illness and burial of Nancy Tanner, were also claimed
by way of set-off.

The defendants also claim credits to their principal as per ac-
counts and vouchers rendered, and allowed by the probate court
of Calhoun county.

The plaintiffs demurred and replied specially that their sup-
port and maintenance had been drawn from other funds in the
hands of James R. Tanner, as their guardian.   In this reply the
plaintiffs claim compound interest on their money.

The defendant Hogan became bankrupt, and was discharged
from the suit.   The court overruled the exception to the juris-
diction, to which ruling a bill of exceptions was taken.   At the
December term, 1869, the plaintiffs recovered a judgment for
twelve hundred and thirty-seven dollars and eighty-six cents.
Not being satisfied with this judgment they moved for a new
trial, which was granted.   The cause was again tried to a jury
at the December term, 1870. . The plaintiffs again recovered a
judgment for two thousand dollars.   Both parties moving for
the same, a second new trial was granted.   At the April term,
1871, a jury was waived, the law and facts submitted to the
court, and a judgment entered for defendants.

It is unnecessary here to state the evidence in this case ; it is
somewhat conflicting, and is of that character which juries
might very honestly differ in estimating.   The court to whom
the case was finally submitted probably placed a correct estimate
upon it.   But we are of opinion that this suit was improperly
brought in the county of Bastrop.

The action was brought by the administrator *de bonis non*, to recover the price of a horse and pony and the hire of certain slaves, which, it was alleged, had come to the hands of the first administrator. This necessarily involved a revision of his account, and this revisory power could not be invoked by an administrator *de bonis non*. (See Murphy *v.* Menard, 11 Texas, 673.) Parties interested in the distribution of the estate could have surcharged and falsified the accounts of the administrator, but this could only have been done in the county of Calhoun, where the succession was opened. (Article 1382, Paschal's Digest.)

An administrator *de bonis non* may maintain an action for the specific property of the estate in the hands of a former administrator, but he cannot sue the former administrator for a *devastavit*. (Stubblefield *v.* McRaven, 5 S. and M., 141.) The administrator *de bonis non* has nothing to do with the maladministration of the former administrator. It is for legatees, distributees, and creditors, that a remedy is given on the bond of the administrator.

Could, then, the heirs of James R. Tanner take up the suit of the administrator *de bonis non*, and not only prosecute for the unadministered property, but in the same suit recover damages for a *devastavit?* We think not. They could only take the place of the administrator *de bonis non*, and recover the property unadministered, if the suit had been brought in the proper county; but the District Court of Bastrop county is not the proper tribunal in which to revise the proceedings of the probate court of Calhoun county.

Under this view the case is disposed of; but this suit should have an end, and we proceed to inquire further. The pleadings raise the question, Are the defendants entitled to credit for the necessaries furnished the minor heirs of Joseph R. Tanner, by their uncle, James R.? We think there can be no doubt they are; and the necessary expenses of raising these children, of administration, reasonable attorneys' fees, and the expenses of bringing the children to their uncle's home in Bastrop county,

were all items properly plead in defense of this action. A court of equity, or a court of probate exercising its equity powers, would make the necessary allowances for the proper maintenance and support of minor children. It is not merely the one year's provision, directed by the statute, that a minor child is entitled to, but where the child has an estate of its own, a reasonable allowance should be made for its support during minority, and, on coming of age, it will have no right to complain of its own consumption of necessaries. It is very true that courts of probate should give no license to superfluity or extravagance.

We think the act of 1848 (Paschal's Digest, 1373), contains no provision in conflict with the common law touching this matter. The act itself says (Paschal's Digest, 1396), "The "rights, powers, and duties of executors and administrators "shall be governed by the principles of the common law, where "the same do not conflict with the provisions of this act." The amount of the estate belonging to the child, as well as its social condition, may furnish a safe guide to guardians, administrators, and courts of probate.

It appears to have been claimed by the plaintiffs that their uncle, as their guardian, had other funds in his hands, coming from their mother's estate, which he should have expended for their support. But it does not appear from the record that this money came to the possession of James R. Tanner until May or June, 1857, but the charges for their support commenced in the year 1854 and run to 1857.

Both parties in their briefs present us an array of figures which they claim to represent the true state of accounts between James R. Tanner and the plaintiffs. There is certainly a very wide difference in the opinion of counsel representing this case. We are sorry that the argument on one side, though able and learned, is not maintained in the best of temper toward the court and witnesses. In the discharge of our duty we feel it incumbent on us to affirm the judgment of the District Court, which is accordingly done.

Affirmed.